IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 16, 2019

## STATE OF TENNESSEE v. ROGER F. JOHNSON

**Appeal from the Circuit Court for Grundy County**
**No. 5910    Thomas W. Graham, Judge**

_____

### No. M2018-01216-CCA-R3-CD
_____

Following a bench trial in the Grundy County Circuit Court, the Defendant, Roger F. Johnson, was convicted as charged of indecent exposure, a Class B misdemeanor. He was subsequently sentenced to a six-month sentence, with service of forty-five days in jail prior to serving the remainder of the sentence on supervised probation. On appeal, the Defendant argues: (1) the indictment fails to charge an offense because it does not include the correct mens rea; (2) the indictment is duplicitous; and (3) the evidence is insufficient to sustain his conviction.[1] We affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Matthew S. Bailey, Spencer, Tennessee, for the Appellant, Roger F. Johnson.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Mike Taylor, District Attorney General; and David McGovern, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

**Trial.** E.F.,[2] who was thirteen years old at the time of the Defendant's bench trial and twelve years old at the time of the incident in this case, testified that on March 23, 2017, she was visiting her aunt and uncle, who lived across the street from the Defendant. E.F. stated that she was playing with her cousin G.M. in the front yard when she heard

_____

[1] We have separated the Defendant's issues for clarity.

[2] It is the policy of this court to identify minor victims by their initials only. We will also identify the minor victims' family members by their initials in order to protect the identity of these victims.

the Defendant whistling. She said that the Defendant was standing in the doorway of his trailer as he whistled at them and that his whistling lasted approximately five to ten minutes. E.F. agreed that the Defendant's whistling sounded like a "catcall." She also said the Defendant's whistling scared G.M. and her and caused them both to cry. Immediately after this incident, E.F. told her aunt what had happened. She said she never saw the Defendant unclothed during this incident but did see him walking back inside his home.

G.M., who was eleven years old at the time of trial and ten years old at the time of this incident, testified that she did not hear the Defendant whistling. When E.F. told her that the Defendant was whistling, G.M. saw that the Defendant, who was standing "a little bit . . . farther out from the doorway," had his pants down around his ankles and was looking at them. G.M. stated that the Defendant's hands were "[u]p near his privates" and that his hands were "covering" his privates. She said she could not see the Defendant's "privates" or his buttocks. Although G.M. could see the Defendant's blue jeans around his ankles, she did not see the Defendant's underwear. She also did not see the Defendant go back inside his home following this incident. G.M. said that the fact that the Defendant's pants were down around his ankles scared her and caused her to cry. After a couple of minutes, she went to tell her father and then her mother what had happened. G.M. acknowledged that her family had previously had a dispute with the Defendant over a cat, which resulted in people cursing at one another and the police being called. She also acknowledged that her father did not like the Defendant.

J.M., G.M.'s father, testified that the incident involving the Defendant took place in the late afternoon or early evening, although it was still light outside. He stated that the Defendant's trailer, which was directly across the street, was approximately 100 to 150 yards from his home. J.M. said he was burning brush in his backyard when he heard whistling and then heard G.M. yell to him that the Defendant was "on the front porch naked." He stated that G.M. was "sh[a]ken up, startled, starting to cry[.]" J.M. said he quickly turned around and saw the Defendant going back inside his own home. At the time, J.M. could see the Defendant's bare buttocks as he walked inside. J.M. said that he was "one hundred percent positive" that he observed the Defendant's bare buttocks that day. He also asserted that he was able to observe the Defendant's buttocks even though the Defendant was approximately 100 to 150 yards away from him. J.M. said that although he heard whistling, it lasted approximately thirty seconds rather than five to ten minutes. He asserted that G.M. was "nervous, shaking" and began crying as a result of the Defendant's actions. J.M. immediately called the police to report the incident.

J.M. acknowledged that there had been prior disputes between the Defendant and him. He admitted that he had previously said he wished the Defendant were not his

neighbor.  J.M. stated that the Defendant's trailer had burned following this incident but denied setting it on fire.

N.M., G.M.'s mother, testified that although she did not observe the Defendant herself, G.M. told her that the Defendant had his pants around his ankles and that G.M. had seen the Defendant's "privates."  She said that G.M. never said she could see the Defendant's penis, testicles, or buttocks, only that she had seen the Defendant's "privates."  She said that G.M. and her niece, E.F., were very upset and were crying following this incident.  She described G.M. as "quite hysterical" after this incident.

The Defendant testified in his own behalf.  He admitted that he went on his front porch and dropped his pants for "fun" but claimed that he was still wearing his white boxer shorts at the time.  When he was asked why he dropped his pants, the Defendant said, "You know, I really don't know."  He denied ever putting his hands over his genital area.  The Defendant said that after dropping his pants, he turned around and went back inside his home.  Although the Defendant initially said he did not remembering whistling, he later acknowledged that he might have whistled.  He said he did not notice E.F. and G.M. across the street.  He asserted that he did not like his neighbors so "why would [he] pay attention to what's going on over there[.]"  The Defendant admitted that he could see the front yard of the home belonging to J.M. and N.M. from his front porch but denied ever seeing J.M. that day.

The Defendant asserted that there had been several disputes between J.M. and him in the three years prior to this incident.  He said that because J.M. and his family had obtained a no contact order against him following this incident, he moved out of his trailer that was across the street from them.  The Defendant said that although he had turned off the electricity and water to his trailer, it burned down the day that J.M. and N.M. returned from vacation.

At the conclusion of the proof, the trial court found that the Defendant's conduct was "intentional[80]."  The court stated, "[T]here's no reasonable explanation to why he would drop his pants on his porch that faced another residence, with children playing in the yard, other than he expected to been seen by those children."  The court then stated the following:

> [H]is hands on his privates would lead one to believe that they were there for sexual arousal.  The catcall would just further exemplify that he was wanting to be seen by, I guess, the little girls, primarily, and the fact that the father saw it almost simultaneously as he wheeled around and went the other way, and that there was no doubt at that time that his pants were all the way to the ground is enough for any ordinary person to be either

- 3 -

offended or to—for the little girls' position or at least [G.M.], she was viewing him conducting himself for the purpose of sexual gratification. I really don't have any doubt about that. There's no explanation—he doesn't give any other explanation. I suppose he could—I mean, he took the stand and testified, he could have said, well, I just stepped off the porch to take a leak, but he didn't say that. He gave no explanation why he dropped his pants, so I think it fits the statute.

The court, as the trier of fact, convicted the Defendant of the charged offense of indecent exposure. On March 2, 2018, the court sentenced the Defendant to six months, with service of forty-five days in jail and the remainder of the sentence on supervised probation. The judgment of conviction for this offense was entered the same day. Thereafter, the Defendant filed a timely motion for judgment of acquittal, motion for arrest of judgment, and motion for new trial, which the trial court denied. The Defendant then filed a timely notice of appeal.

## ANALYSIS

**I.** **Notice to Defendant of Charged Offense.** The Defendant argues that his indictment fails to charge an offense because it does not include the correct mens rea. The State counters that the indictment provided sufficient notice to the Defendant because the challenged portion does not relate to the mens rea for the offense, and that even if it did, the Defendant was able to easily determine the mens rea from the named statute. We conclude that the indictment provided sufficient notice to the Defendant of the mens rea for the charged offense.

The United States Constitution and the Tennessee Constitution state that a defendant is entitled to knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tennessee Const. art. I, § 9. The Tennessee Supreme Court has stated that an indictment is valid if it contains sufficient information (1) to enable the defendant to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the defendant against double jeopardy. State v. Hammonds, 30 S.W.3d 294, 302 (Tenn. 2000) (citing State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997)). Moreover, pursuant to Tennessee Code Annotated section 40-13-202, the indictment must

state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

- 4 -

Tenn. Code Ann. § 40-13-202; see Hammonds, 30 S.W.3d at 300 (stating that "indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements"). Because challenges to the validity of an indictment involve issues of law, we review them de novo. State v. Smith, 492 S.W.3d 224, 239 (Tenn. 2016) (citing Hill, 954 S.W.2d at 727).

The Tennessee Supreme Court reiterated that when determining the validity of an indictment, the strict pleading requirements have been relaxed:

> [W]e emphasize the fact that the Court has moved away from the strict pleading requirements adhered to under the common law. As we noted in Hill, "the purpose of the traditionally strict pleading requirement was the existence of common law offenses whose elements were not easily ascertained by reference to a statute. Such common law offenses no longer exist." Were we to hold otherwise, we would be embracing technicalities that are empty and without reason.

Crittenden v. State, 978 S.W.2d 929, 931 (Tenn. 1998) (citations omitted); see Hill, 954 S.W.2d at 727 ("[A]n indictment need not conform to traditionally strict pleading requirements."). As a result of these relaxed pleading requirements, "an indictment which includes a reference to the criminal statute that sets forth the mens rea is sufficient to give a defendant notice of the applicable mental state." State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999).

Here, the Defendant was convicted of indecent exposure in violation of Code section 39-13-511, which provides, in pertinent part:

> (a)(1) A person commits the offense of indecent exposure who:
>
> (A) In a public place, as defined in § 39-11-106, or on the private premises of another, or so near thereto as to be seen from the private premises:
>
> (i) Intentionally:
>
> (*a*) Exposes the person's genitals or buttocks to another; or
>
> (*b*) Engages in sexual contact or sexual penetration as defined in § 39-13-501; and
>
> (ii) Reasonably expects that the acts will be viewed by another and the acts:

(*a*) Will offend an ordinary viewer; or

(*b*) Are for the purpose of sexual arousal and gratification of the defendant[.]

. . .

(b)(1) "Indecent exposure", as defined in subsection (a), is a Class B misdemeanor, unless subdivision (b)(2), (b)(3) or (b)(4) applies.

(2) If the defendant is eighteen (18) years of age or older and the victim is under thirteen (13) years of age, indecent exposure is a Class A misdemeanor.

(3) If the defendant is eighteen (18) years of age or older and the victim is under thirteen (13) years of age, and the defendant has any combination of two (2) or more prior convictions under this section or § 39–13–517, or is a sexual offender, violent sexual offender or violent juvenile sexual offender, as defined in § 40–39–202, the offense is a Class E felony.

(4) If the defendant is eighteen (18) years of age or older and the victim is under thirteen (13) years of age, and the offense occurs on the property of any public school, private or parochial school, licensed day care center or other child care facility during a time at which a child or children are likely to be present on the property, the offense is a Class E felony.

Tenn. Code Ann. § 39-13-511 (2014).

The Defendant was indicted as follows, and the specific portion to which he objects has been underlined:

The Grand Jurors of Grundy County, Tennessee, duly impaneled and sworn upon their oath, present that:

**ROGER F. JOHNSON** on the 23rd day of March, 2017 in Grundy County, Tennessee, and before the finding of this indictment did unlawfully, knowingly, and intentionally expose his genitals or buttocks in a public place or on private premises of another or so near hereto as to be seen from the private premises and the said **Roger F. Johnson**, should have reasonably expected the act would be viewed by another and that such act

- 6 -

would offend an ordinary person, or <u>should have reasonably expected</u> the act would be viewed by another and the act was done for the purpose of sexual arousal and gratification of the said **Roger F. Johnson**, in violation of **T.C.A. 39-13-511b**, all of which is against the peace and dignity of the State of Tennessee.

The Defendant argues that his indictment fails to charge an offense because it does not include the correct mens rea. He contends that while the indictment states that he "should have reasonable expected" that his act would be viewed by another, which is an objective test, the statute for indecent exposure requires that he "reasonably expects" that his act will be viewed by another, which is a subjective test with an objective component. The Defendant notes that while the public indecency statute, <u>see</u> <u>id.</u> § 39-13-517(d)(3)(A), has an objective test because it uses the "reasonably should know" language, the indecent exposure statute, which cites to the public indecency statute and is the offense for which the Defendant was charged and convicted, has a subjective test with an objective component because the statute uses the "reasonably expects" language. The Defendant claims that "[s]ince the legislature knew of the objective language in the public indecency statute and instead chose to use subjective language in the indecent exposure statute, . . . the crime of indecent exposure requires a subjective expectation that the acts will be viewed by another."

We next consider whether the indictment in this case charges an offense. The Tennessee Supreme Court held that so long as the constitutional and statutory requirements in <u>Hill</u> are met, "an indictment which cites the pertinent statute and uses its language will be sufficient to support a conviction." <u>Ruff v. State</u>, 978 S.W.2d 95, 100 (Tenn. 1998). Even if the indictment references the wrong mens rea for the charged offense, it is not void as long as "'there was a specific reference in the indictment to the statute allegedly violated' and the 'culpable mental state was easily ascertained by reference to [that] statute.'" <u>State v. Mario D. Frederick</u>, No. M2016-00737-CCA-R3-CD, 2017 WL 2117026, at *8 (Tenn. Crim. App. May 15, 2017) (quoting <u>State v. Tyrone Sain</u>, No. 02C01-9710-CC-00379, 1998 WL 999905, at *4 (Tenn. Crim. App. Dec. 24, 1998)); <u>see</u> <u>Montez Adams v. Cherry Lindamood, Warden</u>, No. M2016-01073-CCA-R3-HC, 2017 WL 564897, at *2 (Tenn. Crim. App. Feb. 13, 2017) (concluding that the erroneous inclusion of the "reckless" mens rea did not render the felony murder count of the indictment void because the appellant was given sufficient notice of the offense charged).

The indictment charged the Defendant with intentionally exposing his genitals or buttocks, and it included the correct mens rea for this element of the charged offense. As to the very slight disparity in language regarding the element that the person reasonably

expects that the act would be viewed by another,[3] we conclude that the indictment, which includes the correct statute for the charged offense and ample information regarding the elements of this offense, provided sufficient notice to the Defendant of the charged crime. See Ruff, 978 S.W.2d at 100; Mario D. Frederick, 2017 WL 2117026, at *8. Accordingly, we conclude that the Defendant is not entitled to relief on this issue.


The Defendant also asserts that the inclusion of "T.C.A. 39-13-511(b)" was insufficient to cure the defect in his indictment because this Code section provides sentencing classification information rather than the correct mens rea for the charged offense. He claims that although Code section 39-13-511(b) refers to subsection (a), which contains the correct mens rea for the charged offense, the act of "citing a subsection without the mens rea makes it difficult for 'a man of common understanding to know what is intended.'" See Tenn. Code Ann. § 40-13-202. He also maintains that mens rea discrepancy between the indictment and statute in Mario D. Frederick is easier for a man of common understanding to grasp than the discrepancy between the indictment and statute in his case. See Mario D. Frederick, 2017 WL 2117026, at *7-8 (concluding that the trial court did not err in denying the defendant's motion for arrest of judgment when the indictment, which included the correct statute for the charged offense, erroneously included the "knowing" rather than the "intentional" mens rea for the solicitation of sexual exploitation of a minor offense). The Defendant contends that while "knowingly" and "intentionally" have meaning common men can understand, the "should have reasonably expected" and "reasonably expects" language involve a "fine legal distinction that common men would not readily grasp." See generally R. George Wright, Objective and Subjective Tests in the Law, 16 U.N.H.L. Rev. 121 (2017). Accordingly, the Defendant claims that his indictment fails to state an offense and that his conviction should be reversed.

We find this argument unpersuasive. The indictment clearly referenced the correct statute for the charged offense and the specific language used in the indictment clearly guided the Defendant to Code section 39-13-511(a)(1)(A)(ii), which provides the "reasonably expects" language. See Mario D. Frederick, 2017 WL 2117026, at *8 (concluding that an indictment containing the wrong mens rea is not void as long as the indictment names the statute alleged violated and the mens rea is easily ascertained by reference to that statute). Although the indictment referenced subsection (b) of the statute, which contained information about sentencing classifications, we agree with the

---

[3] "There are two broad categories of mens rea—subjective and objective." Johnathan L. Hood, What is Reasonable to Believe?: The Mens Rea Required for Conviction Under 21 U.S.C. § 841, 30 Pace L. Rev. 1360, 1362 (2010). "Subjective mens rea requires proof of what the defendant actually knew at the time of the offense" while "[o]bjective mens rea . . . requires proof of what the defendant should have known." Id.

State that this language was mere surplusage and that the indictment correctly identified the indecent exposure statute.  See Joey Lee Smith v. Kevin Myers, Warden, No. 2005-01732-CCA-R3-HC, 2005 WL 3681656, at *2 (Tenn. Crim. App. Jan. 18, 2006) ("It is well-settled that an indictment is not defective because of the inclusion of surplusage if, after eliminating the surplusage, the offense is still sufficiently charged.").  Other than the "should have reasonable expected" language, the indictment follows the language of the indecent exposure statute.

We conclude that the indictment in this case achieved the overriding purpose of notice to the Defendant of the charged offense and satisfied the constitutional and statutory requirements.  We note that if the Defendant needed additional information about the offense with which he was charged, he should have moved for a bill of particulars pursuant to Tennessee Rule of Criminal Procedure 7(c), which enables a defendant to "'know precisely what he or she is charged with.'"  Tenn. R. Crim. P. 7, Advisory Comm'n Cmt; see State v. Hicks, 666 S.W.2d 54, 55 (Tenn. 1984).  "While a bill of particulars certainly will not save an otherwise invalid indictment, it can serve to narrow a general indictment and provide a defendant with enough information about the charge to allow the defendant to prepare a defense and avoid prejudicial surprise at trial." Hammonds, 30 S.W.3d at 303 (citing State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991)). We conclude that the Defendant's indictment satisfied all the statutory and constitutional requirements and that if the Defendant needed more specific information in order to prepare his defense, he should have moved for a bill of particulars, which he failed to do. See id.  Accordingly, the Defendant is not entitled to relief.

**II.  Duplicitous Indictment.**  The Defendant appears to argue that his indictment is duplicitous because it references the display of both genitals and buttocks.  He claims that these terms refer to different parts of the body and that the statutory definitions in Code section 39-13-501(7) distinguish between genital openings and anal openings.  The State counters that the Defendant has waived the duplicitous claim by failing to raise it prior to trial and that even if the indictment is duplicitous, the Defendant suffered no prejudice.

We agree with the State that the Defendant has waived plenary review of this issue by failing to make a pre-trial motion alleging a defect in the indictment.  See Tenn. R. Crim. P. 12(b)(2) (stating that a motion alleging a defect in the indictment must be raised before trial); Tenn. R. Crim. P. 12(f)(1) ("Unless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with . . . rules requiring such matters to be raised pretrial[.]").  We note that "Tennessee Rule of Criminal Procedure 12(b)(2)(A) requires a defendant to file a motion alleging non-jurisdictional indictment defects, including duplicity, before the trial, and this court has concluded that failure to allege a duplicitous indictment before the trial results in waiver

- 9 -

of appellate review." State v. Duran Maszae Lee, No. E2017-00368-CCA-R3-CD, 2018 WL 934534, at *4 (Tenn. Crim. App. Feb. 16, 2018) (citing State v. Michael Burnette, No. E2005-00002-CCA-R3-CD, 2006 WL 721306, at *3 (Tenn. Crim. App. Mar. 22, 2006); State v. Donald Richardson, No. 87-192-III, 1988 WL 52670, at *1 (Tenn. Crim. App. May 24, 1988)), perm. app. denied (Tenn. June 6, 2018).  Moreover, the Defendant has failed to request plain error relief as to this issue and, consequently, has failed to provide any analysis of the five factors required for plain error review.

The plain error doctrine states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b).  In order for this court to find plain error,

> "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  "[P]lain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (internal quotations marks omitted).  "It is the accused's burden to persuade an appellate court that the trial court committed plain error."  State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing United States v. Olano, 507 U.S. 725, 734 (1993)).  "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Smith, 24 S.W.3d at 283.  A recognition of plain error "should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." Adkisson, 899 S.W.2d at 642.  We must now consider these five factors in determining whether the Defendant is entitled to plain error relief.

Here, the Defendant appears to argue that his indictment is duplicitous because it mentions both the display of genitals and buttocks.  An indictment charging two or more offenses in the same count is bad for duplicity.  Griffin v. State, 70 S.W. 61, 62 (Tenn. 1902); Forrest v. State, 81 Tenn. 103 (1884).  "It is impermissible to charge two or more distinct and separate offenses in a single-count indictment."  Michael Burnett, 2006 WL 721306, at *2 (citing State v. Angela E. Isabell, No. M2002-00584-CCA-R3-CD, 2003 WL 21486982, at *3 (Tenn. Crim. App. June 27, 2003)).  "[T]he purpose behind the prohibition of a duplicitous indictment is the avoidance of the following dangers:  (1)

- 10 -

failure to give the defendant adequate notice of the charges against him; (2) exposure of the defendant to the possibility of double jeopardy; and (3) conviction of the defendant by less than a unanimous jury verdict." Id.

We conclude that the indictment's reference to the display of "genitals or buttocks" did not amount to plain error. The indictment simply provided alternate theories by which the State sought a conviction. Cf. State v. Lemacks, 996 S.W.2d 166, 171 (Tenn. 1999) (concluding that the general verdict satisfied the appellee's right to a unanimous jury where the trial court instructed the jury that it needed to deliberate and render a unanimous verdict under the single-count indictment and that it could convict the appellee of DUI based on the appellee's own actions or under a theory of criminal responsibility for another's actions); Hammonds, 30 S.W.3d at 300 ("[A]n indictment need not allege the specific theory or means by which the State intends to prove each element of an offense to achieve the overriding purpose of notice to the accused.").

The indictment charged the Defendant with a single act of indecent exposure and included the date of the offense. Consequently, we conclude that the Defendant received adequate notice of the charge against him and was adequately protected against double jeopardy. We also conclude that there is no issue regarding juror unanimity in this case because the trial court, acting as the trier of fact in the bench trial, convicted the Defendant. At the motion for new trial hearing, the trial court specifically found that there had been no proof presented that the Defendant exposed his genitals and that the conviction was based on the Defendant's exposure of his buttocks. Because the Defendant has failed to carry his burden of persuasion that a clear and unequivocal rule of law was breached, that a substantial right belonging to him was adversely affected, or that consideration of the error was necessary to do substantial justice, we conclude that the Defendant is not entitled to plain error relief regarding his allegation that the indictment was duplicitous.

**III. Sufficiency of Evidence.** The Defendant also argues that the evidence is insufficient to sustain his conviction. He asserts that the proof did not show that he exposed his genitals or that he reasonably expected that J.M. would see his buttocks. The State counters that the evidence presented at trial is sufficient to sustain the Defendant's conviction for indecent exposure. We agree with the State.

In considering the sufficiency of the evidence, we note that the Defendant waived his right to a jury trial and proceeded to a bench trial, where the trial court as the trier of fact evaluated the credibility of witnesses, determined the weight given to testimony, and resolved all conflicts in the evidence. State v. Steven Kelly, No. M2018-00659-CCA-R3-CD, 2019 WL 920361, at *2 (Tenn. Crim. App. Feb. 25, 2019), perm. app. denied (Tenn. Apr. 11, 2019). The trial court's verdict in the Defendant's bench trial carried the same

- 11 -

weight as a jury verdict.  State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978); State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict."  State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.  State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two.  State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998).  The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'"  State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275).  The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence.  State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)).  Moreover, the trier of fact determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the trier of fact. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court does not re-weigh the evidence or substitute its inferences for those drawn by the trier of fact.  Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

At the motion for new trial hearing, the parties and the trial court discussed whether the evidence was sufficient to sustain the Defendant's conviction:

> [Defense Counsel]:  [I]nsufficient evidence.  And I have several arguments for insufficient evidence.  The first is that these are alternate theories of the crime and they have not proven the elements to each alternate

theory. So you have got indecent exposure by exposing one's genitals, indecent exposure by exposing one's buttocks . . . . These are alternate theories and you can't just jumble the elements together.

The Court:                Of course, the facts in th[is] case did not talk about genitals, so there is only one thing that they could have determined and that would be buttocks.

[Defense Counsel]:        Well, and so I kind of deal with both of that in the memorandum, because the genitals were never seen by the girls. The buttocks, though, the father said that when he turned to see [the Defendant], he was already walking back inside. So when it comes to the intentional element or at least knowing element, that's not there. [The Defendant] never saw the father. . . .

[The State]:              . . . [Y]ou may recall the [Defendant] got on the stand and, you know, we asked him why he yanked his britches down and he just kind of [said], well, I don't really know. It wasn't like, you know, I was using the restroom or—it was just I don't know.

                          . . . We think he intentionally exposed himself. And I think it was sufficient that . . . Your Honor heard not only the [minor victims'] testimony that corroborates [the other testimony from the State's witnesses], but then we heard the father's testimony . . . of what he observed, . . . [the Defendant's] buttocks, as he went back in the house. Now, that's where the State maintains that we put forth sufficient evidence.

[Defense Counsel]:        And, I mean, we can see the proof did have that the buttocks w[ere] exposed, but the statute [requires that the person] reasonably expects the acts will offend an ordinary viewer or [is] for the purpose of sexual arousal or gratification. If he doesn't know

- 13 -

| | |
|---|---|
| | the father is there, I just argue they have not proven that particular element. . . . |
| The Court: | Well, if the children were there, they— |
| [Defense Counsel]: | The children never saw him. |
| The Court: | They saw that he had his hands down in his crotch and that sort of thing. |
| [Defense Counsel]: | . . . [Y]es, that would be enough for indecent exposure [by sexual contact], but they didn't indict that, so that would be a constructive amendment. |

Later, the trial court concluded that although some of the proof was inconsistent, the evidence was nevertheless sufficient to sustain the Defendant's conviction for indecent exposure. Specifically, the court stated,

> I think there was some inconsistency between what the children saw or were able to see and the father and all that, but I don't think there was any doubt that [the Defendant] was standing on his porch with his pants dropped down in a place where he could be seen by all three of those individuals. And something shocked the heck out of the little girls because they were real upset, as I recall from the testimony.

First, the Defendant claims that the evidence is insufficient to sustain his conviction for indecent exposure by exposing genitals because the proof established that he covered his genitals with his hands and that the minor victims never saw his genitals. He specifically references E.F.'s testimony that she did not see him unclothed, G.M.'s testimony that she only saw the Defendant's hands over his privates and did not see his "privates," and his own testimony that he was wearing white boxer shorts at the time of the incident. He also references the trial court's statements at the motion for new trial hearing that the evidence in this case only supported a finding that the Defendant exposed his buttocks, not his genitals. Although the Defendant acknowledges that dropping one's pants and touching the clothing over one's genitals when young girls are nearby is "likely criminal" pursuant to the offense of indecent exposure pursuant to Code section 39-13-511(a)(1)(A)(i)(b), he asserts that he was not indicted for indecent exposure by sexual contact.

Second, the Defendant argues that the evidence is insufficient to support a conviction for indecent exposure by exposing one's buttocks because the proof showed

- 14 -

that he had no reasonable expectation that J.M., G.M.'s father, would see his buttocks. He references J.M.'s testimony that the distance between their homes was 100 to 150 yards, that J.M. was clearing property in his own backyard when G.M. told him that the Defendant was on the front porch naked, and that J.M. turned around while still in his backyard and saw the Defendant's bare buttocks just as the Defendant walked back inside his home. The Defendant admits that morally, he "should have reasonably expected the act would be viewed by another," but that criminally, the indecent exposure statute requires him "to reasonably expect that the act would be viewed by another." See Tenn. Code Ann. § 39-13-511(a)(1)(A)(ii). The Defendant asserts that because he was walking back inside his home and never knew J.M. "was there," he did not reasonably expect that the act of exposing his buttocks would be viewed by J.M.

The Defendant also contends that "[t]he only way to sustain [his] conviction is to mix elements from both theories of indecent exposure." He claims that "[t]he temptation" is to take one of the elements in Code section 39-13-511(a)(1)(A)(ii) as it relates to the minor victims and then combine it with the exposure element in Code section 39-13-511(a)(1)(A)(i) as it relates to J.M. He claims that "[t]his temptation is especially great given that [he] likely committed the unindicted crime of indecent exposure by sexual contact." See id. §§ 39-13-511(a)(1)(A)(i)(b), 39-13-501(6). The Defendant contends that because the State never proved all of the elements to an indicted theory of indecent exposure, this court should reverse his conviction.

Initially, we conclude that the proof is insufficient to show that the Defendant intentionally exposed his genitals to the minor victims. E.F. testified that she did not see the Defendant unclothed during this incident. G.M. testified that the Defendant had his pants down around his ankles but that the Defendant's hands were "[u]p near his privates" and were "covering" his privates. Consequently, we conclude that the State failed to prove that the Defendant intentionally exposed his genitals.

However, because the proof is sufficient to show that the Defendant intentionally exposed his buttocks and reasonably expected that this act would be viewed by another and would offend an ordinary viewer, the evidence is sufficient to support his conviction for indecent exposure as indicted. See id. § 39-13-511(a)(1)(A)(ii)(*a*). A defendant, who whistles at children and stands on his front porch with his buttocks exposed, can reasonably expect to be seen by these children or someone else in front of his home. See Mario D. Frederick, No. M2014-01653-CCA-R3-CD, 2015 WL 5924942, at *5 (Tenn. Crim. App. Oct. 12, 2015); State v. Darrell Little, No. M2014-01927-CCA-R3-CD, 2015 WL 5679620, at *5 (Tenn. Crim. App. Sept. 28, 2015). Such a defendant can also reasonably expect that this act will offend an ordinary viewer. See Mario D. Frederick, 2015 WL 5924942, at *5. Here, the trial court, as the trier of fact, simply accredited the testimony of the State's witnesses over the testimony of the Defendant, as was its

prerogative. Viewing the evidence in the light most favorable to the State, we conclude that the proof is sufficient to sustain the Defendant's conviction for indecent exposure.

## **CONCLUSION**

Based on the aforementioned authorities and reasoning, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE